[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On May 30, 1987, after living together for approximately seven years, the parties were married at New Haven, Connecticut. The Wife's complaint claimed a dissolution of marriage, alimony, joint legal custody with physical custody to her, child support, damages, counsel fees, and other relief. The Husband filed an answer admitting all of the paragraphs in the Wife's complaint and a cross-complaint claiming a dissolution of marriage, custody orders, an equitable division of the estate of the parties, and other relief. After status conferences, pre-trials, mediations, special masters, and pendente lite hearings, none of which were successful, the parties were fully heard over three days of trial.
The Wife is 41 years of age, in good health, and has a high school diploma and a 2-year certificate from a dental assistant school. For a time, prior to the marriage, she worked in a dental office. In 1989, she became employed by the US Post Office. She worked there until 1995 when she left because she developed complications with her pregnancy. She returned to work in January of 1997 but left in 1998 because she was again pregnant. She returned in October and worked, at times part-time, until May of 2000. She has not worked since and has no plans to return until all three of her children are in school full-time. No income capacity is assigned to her at this time, but it is clear to the court that she is capable, intelligent, and needs to be working full-time in the near future if she is to be economically viable. Once the dissolution of marriage is behind her and the children are all in school, she should be back in the job market. At that time, any periodic orders entered herein should be subject to review.
The Husband is 42 years of age, in good health, and has an 11th grade education. He testified that he has been in therapy for problems arising out of the breakdown of the marriage. Since at least 1980, he has been employed as a stage hand, working throughout the country for many years but since 1994 primarily in New York City. As a union employee for two different locals, he works on many different jobs in different theaters. His current income the court finds to be $83,200.00 per year, although, with overtime, he has earned much more in the past. He testified that the 9/11/01 tragedy adversely affected his income and work has been very slow in returning to former levels. His income, as well as that of the Wife, needs monitoring for possible future modification of the orders contained CT Page 5662 herein.
Five children were born to the Wife during the marriage, three of whom survive, to wit: Daniel Francis, born May 3, 1996, and twins Shawn Patrick and Nicholas Clark both born May 7, 1998. During her first pregnancy, the Wife gave birth to triplets, however, one child died after one month and the second child after six months. The Wife used in vitro fertilization in order to become pregnant in both instances. Almost throughout the second pregnancy she was on complete bed rest, and literally could not leave her bed except to go to the bathroom or shower.
The Wife described one child as having attention deficit disorder and another with an acute hearing problem which requires very expensive hearing aids in both ears. Testimony indicated that the difficult pregnancies, the death of the two children, and the physical problems of the surviving children put a strain on the marriage. As a result of these circumstances, the Wife indicated that she would not be able to return to work until all children were in school full-time.
Both parties would appear to have sufficient skills to properly parent the children. It is clear that the Wife should be the primary caretaker. However, it should be noted that the Husband complained, with some justification, about the Wife's choice and use of baby sitters. Further, the Wife showed poor judgment in having her boyfriend, during the pendency of this action, spend frequent overnights when the children are in the residence.
Neither party described any assets of significance which they brought to the marriage. The Wife described financial assistance, more than six thousand dollars, from her sister to help make ends meet after the divorce was started which need not be paid back. She also availed herself of approximately $31,000.00 of marital savings, during a span of a few months, which she claimed she needed to meet living expenses and pay legal fees. Surprisingly, little remains of those savings or the six thousand dollars gifted by her sister despite pendente lite orders of alimony and support which were in place.
The assets of the parties the court finds to be as follows:
• Residence located at 54 Overlook Avenue, West Haven (fair market value $170,000.00 less mortgage balance of $20,000.00 equals equity) 150,000.00 CT Page 5663
• 1999 Dodge equity 0
• 1989 Volvo 2,500.00
• personal property (Husband) —
• personal property (Wife) —
• checking account (Wife) 1,700.00
• Checking account (Husband) 640.00
• Gold coins and silver bars 1,000.00
• Post Office bonds 5,000.00
• N.Y. Life Insurance CSV 14,000.00
• Post Office TDSP (wife) 24,501.37
• IA Annuity (husband) 34,986.37
• Local Annuity (husband) 31,111.31
• Union Pension ($1118.00/mo/age 65) —
• 69 Corvette 3,000.00
• 77 C Gull Boat 500.00
• burial plots 2,500.00
• tax refund 5,500.00
TOTAL ASSETS $278,439.05
The Wife listed no liabilities on her financial affidavit but the Husband showed $13,100.00 in miscellaneous credit card debt.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. The Wife claimed that one of the stressors in the marriage was the fact that the Husband traveled in his work and was often gone for six months or more in a given year. This was the pattern from 1980 when they started living together, until 1995 when he stopped traveling and concentrated on work in New York City. Other major complaints were the Husband's extensive use CT Page 5664 of drugs and alcohol, very late hours, physical abuse, criminal arrests, and frequent arguments. The Husband claimed that the Wife admitted to an affaire during the marriage, she denied it, and was suspicious that she had other affairs. He also stated that he believed she did not love him and stayed with him only for financial reasons. While there are two sides to every breakdown, and perceptions always vary, the Wife's claims would seem to be more credible.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
DISSOLUTION OF MARRIAGE
The marriage is dissolved on the grounds of an irretrievable breakdown.
CUSTODY AND VISITATION
The parties shall have joint legal custody of the minor children whose primary physical residence shall be with the Wife. The Husband shall have reasonable, liberal, and flexible rights of visitation with the children including but not limited to the following:
1. Every week from Sunday at 10:00 a.m. through Tuesday at 3:00 p.m. and Fridays from 8:00 a.m. to 3:00 p.m. In the event the Husband is unable to visit with the children on the appointed days, whether for work related or other reasons, the Wife shall be promptly notified and she shall have the option of caring for the children.
2. Each party shall have two weeks of vacation with the children during the summer months. In even numbered years the Husband shall have the first option to select the weeks intended by notifying the Wife in writing by May 15. The Wife shall give notice of the weeks she selects by June 1st. In subsequent years the parties shall alternate the selection process with the Wife having the first option in odd numbered years.
3. The February and April vacation periods shall be alternated between the parties with the Wife having the first choice in odd numbered years.
4. Christmas Eve shall belong to the Husband and Christmas Day to the Wife. The Christmas vacation shall be divided equally between the parties. The Easter holiday shall be alternated commencing with CT Page 5665 odd-numbered years to the Wife.
5. The selection of child care or baby sitters for the children on a regular basis shall be discussed between the parties before made. The parties shall use their best efforts to agree upon suitable persons to care for the children. In the event of a dispute, the parties shall first mediate the issue with the Family Services Unit of the Superior Court before bringing the matter to the court.
6. All major decisions affecting the children shall be made after prior consultation and mutual agreement. In the event of a dispute, the parties shall first mediate the issue with the Family Services Unit of the Superior Court before bringing the matter to the court.
CHILD SUPPORT
The Husband shall pay to the Wife as child support for the minor children, the sum of $385.00 per week which the court finds to be the presumptive amount in the child support guidelines. Said sum is to be paid pursuant to a contingent wage withholding order.
The parties shall equally share the agreed upon reasonable costs and expenses associated with extracurricular activities of the children including summer camp, music lessons, and athletic pursuits.
For the 2002-2003 school year only, the parties shall equally share the cost of Montessori School education for the children. The refund from the 2001 Internal Revenue Service and State of Connecticut tax returns shall be used by the parties to help defray such expenses.
LIFE INSURANCE
The Husband shall name the minor children, or a trust for their benefit approved by the Wife, equal beneficiaries on the $200,000.00 New York Life Insurance Company policy insuring his life. He may borrow the cash surrender value, estimated to be $14,000.00 and effectively lowering the face value, for the sole purpose of reducing the liabilities shown on his financial affidavit.
The Wife shall name the minor children, or a trust for their benefit approved by the Husband, equal beneficiaries on the $100,000.00 New York Life Insurance Company policy insuring her life.
The Husband shall name the wife beneficiary on his People's Bank life insurance policy in the amount of $100,000.00 until he no longer has any obligation for alimony. CT Page 5666
These life insurance orders are subject to modification.
MEDICAL INSURANCE
The Husband shall maintain the group medical health insurance he now has in force for the benefit of the minor children as long as it is provided to him at a reasonable cost. Un-reimbursed expenses shall be shared 65% by the Husband and 35% by the Wife pursuant to the child support guidelines. This paragraph shall be subject to modification.
The Wife, at her sole cost, shall have available to her COBRA medical insurance benefits from the Husband's group carrier. The Husband shall cooperate with her in the processing of her application.
ALIMONY
The Husband, during his lifetime, shall pay to the Wife as alimony the sum of $300.00 per week pursuant to a contingent wage withholding order. Said sum shall be payable until the Wife's death, remarriage, or cohabitation as defined in statutory and case law, and, if not sooner terminated, shall cease 10 years from date. On September 15, 2004, said alimony shall be reduced to $150.00 per week. This paragraph shall be subject to modification once the Wife becomes employed, whether full- or part-time, which is anticipated.
REAL ESTATE
The jointly owned real estate located at 54 Overlook Road, West Haven, shall remain in both names for one year from date. At any time during said year, the Wife may purchase the Husband's interest for $75,000.00. Upon payment of said sum, and the release of the Husband's name from any liability on the mortgage, the Husband shall quit claim his interest to the Wife. If she does not purchase his interest within said year, the house is to be immediately placed on the market for sale. In the event the parties are unable to agree upon listing price, terms, and conditions of sale, the court shall retain jurisdiction to resolve the issue.
The Wife shall have exclusive use and occupancy of the residence until sale. She shall also have the sole responsibility for the payment of the mortgage, taxes, and insurance and other ordinary expenses concerning same. Major repairs, defined as a single repair costing $500,00 or more, if any, shall be shared equally by the parties. No such repairs shall be incurred without agreement.
PERSONAL PROPERTY
CT Page 5667
The parties shall equitably divide their furniture and furnishings. In the event they are unable to do so within 30 days from date, they are to report to the Family Services Unit for mediation of the issue before returning to the court, within 60 days from date, for final disposition. If no action is taken within said 60 days, each party shall retain the property currently in their possession and control without further claim from the other.
The jewelry, clothing, and personal items in each party control shall remain theirs without claim from the other.
The Wife shall retain the 1998 Dodge Caravan and the Husband the 1989 Volvo and the 1969 Corvette automobiles. The Husband shall also retain the 77 Gull outboard boat.
Each party shall retain their respective checking and savings accounts. The Wife shall retain the savings bonds and the Husband the gold coins and silver bars. The parties shall retain the jointly owned burial plots.
RETIREMENT ASSETS
The parties shall equally share the Wife's US Post Office Thrift Account (represented to be approximately $24,000.00), the Husband's IA Annuity (represented to be $34,986.37), and his Local Annuity (represented to be $31,111,31). Said transfers are to be pursuant to rollovers or other appropriate non-taxable transfer instrument. The Husband shall transfer to the Wife 50% interest in his union pension (represented to be $1,118.00 per month at age 65) pursuant to a Qualified Domestic Relations Order which he shall cause to be prepared. Until the transfers are accomplished within a reasonable period of time, the court shall retain jurisdiction.
CHILDREN'S BANK ACCOUNTS AND STOCK PORTFOLIO
The agreement of the parties dated May 2, 2002, on file, concerning the children's assets was reviewed by the court and is incorporated herein by reference.
LIABILITIES
Each party shall be solely responsible for the liabilities shown on their respective financial affidavits. Specifically, the Husband shall save the Wife harmless from any and all claims regarding the liabilities shown on his affidavit. CT Page 5668
COUNSEL FEES
No counsel fees are awarded.
TAXES
The Husband shall be entitled to claim all three children as dependents on his federal and state tax returns, and to claim the child care credit for them. This paragraph assumes the Wife remains unemployed and will be subject to modification once she becomes employed full or part time.
By May 1st of each year, the parties shall exchange their complete IRS tax returns to monitor if the payments of alimony and support are appropriate under the circumstances then existing.
MISCELLANEOUS
Each party shall sign any necessary documents and cooperate as needed to effectuate the orders contained herein.
Plaintiff's counsel shall prepare the judgment file, have it certified by defendant's counsel, and file it with the court within 30 days.
______________ CUTSUMPAS, J.